FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 14, 2025

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DANIELLE A. N.,

                              Plaintiff,

        v.

FRANK BISIGNANO[1],
Commissioner of Social
Security,

                              Defendant.

NO. 4:24-CV-5137-TOR

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT

    BEFORE THE COURT is Plaintiff's Motion for judicial review of Defendant's denial of her application for benefits under Title XVI of the Social

---

[1]Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this under the Social Security Act, 42 U.S.C. § 405(g).

Security Act (ECF No. 13). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, the Commissioner's denial of Plaintiff's application for benefits under Title XVI of the Social Security Act is AFFIRMED

## JURISDICTION

The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 3

work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 4

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R.

§ 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

On March 24, 2022, Plaintiff protectively filed for Title XVI supplemental security income, alleging a disability onset date of March 1, 2022.  Administrative Transcript (Tr.) ECF No. 6 at 22.  Plaintiff generally alleged she was disabled due to Raynauds syndrome, Marfan syndrome, major depressive disorder, social anxiety disorder, gender dysphoria, avoidant personality disorder, post-traumatic stress disorder, learning disorder with impaired reading and writing, mitral valve prolapse, history of gender reassignment surgery, status-post gender-affirming facial surgery, autoimmune thyroiditis, stage III chronic kidney disease, recurrent urinary tract infection, scoliosis, and headaches.  Tr. 25.  Her application was denied on October 31, 2022, and upon reconsideration on June 20, 2023.  Tr. 22.

By mutual agreement, the Administrative Law Judge ("ALJ") conducted a telephonic hearing on May 15, 2024.  Tr. 22.  The ALJ then denied Plaintiff's claims on June 2, 2024.  Tr. 39.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since March 24, 2022, the date of application.  Tr. 24.  At step two, the ALJ determined that Plaintiff's Raynaud's syndrome, seizure disorder, Marfan syndrome, major depressive disorder, social anxiety disorder, gender dysphoria, avoidant personality disorder, post-traumatic distress disorder ("PTSD"), and learning disorder with impaired reading and writing were severe impairments, supported by the medical record.  Tr. 24.  The ALJ found that Plaintiff's mital valve prolapse, history of gender reassignment surgery, status-post gender-affirming facial surgery, autoimmune thyroiditis, stage III kidney disease, and recurrent urinary tract infection to be non-severe medically determinable impairments.  Finally, the ALJ found Plaintiff's headaches and scoliosis to be nonmedically determinable.  Tr. 25.

At step three, the ALJ determined that Plaintiff's physical impairments do not meet or medically equal a listed impairment pursuant to 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).  Tr. 25.  With respect to Plaintiff's cardiovascular impairments, the ALJ was not presented with the appropriate diagnostic and clinical findings pursuant to the listing.  Tr. 25.  The

ALJ found that Plaintiff's seizure patterns did not meet the requirements of listing 11.02. Tr. 25. Likewise, the ALJ found that Plaintiff's Marfan syndrome symptoms did not comport with a listing as related to either 14.06 and 14.09, dealing with connective tissues and inflammatory arthritis, and 1.00 dealing with musculoskeletal disorders. Tr. 26. Regarding Plaintiff's mental impairments, the ALJ determined that Plaintiff had moderate impairments in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. Tr. 25–28. The ALJ also did not find that Plaintiff had a "paragraph C" listing because she did not produce evidence of "medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing that diminishes the symptoms and signs of a mental health disorder" and "marginal adjustment, demonstrated as minimal capacity to adapt to changes in environment or to demands that are not already part of daily life." Tr. 28.

The ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to perform the following:

> [M]edium work as defined in 20 CFR 416.967(c) except the individual can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The individual can frequently stoop, crouch, kneel, and crawl. The individual can never perform driving as a job duty. The individual should avoid all exposure to loud noise, excessive vibrations, and workplace hazards, such as dangerous moving machinery and unprotected heights. The individual is limited to performing simple tasks. The individual can tolerate occasional changes in the work

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE XVI OF THE SOCIAL SECURITY ACT ~ 8

1  setting. The individual can tolerate frequent interaction with coworker
2  and supervisors. The individual can tolerate occasional interaction with
   the public.

3  Tr. 28.

4      In making this determination, the ALJ found that Plaintiff's medically

5  determinable impairments could reasonably cause some of the alleged symptoms,

6  but that her statements concerning intensity, persistence, and limiting effects were

7  not consistent with the overall record.  Tr. 29–30.  The ALJ opined that the

8  medical evidence provided some degree of limitation, but does not support the

9  degree that Plaintiff presents.

10     Regarding her physical impairments, the ALJ discussed that two surgeries to

11 repair a post-gender reassignment surgery rectovaginal fistula were cancelled due

12 to partial seizures observed during pre-operation examination, one in September

13 and one in December of 2020.  Tr. 30.  Plaintiff's right arm and head were

14 twitching but she was alert and verbal during the seizure.  Tr. 30.  In March 2021,

15 Plaintiff sought seizure management treatment from Dr. Steven Erlemeier, and was

16 prescribed 300 milligrams of Gabapentin three times per day with mixed results

17 through 2022 and 2023.  Tr. 30–31.  In November 2023, Plaintiff reported that she

18 had not had a seizure in the past 30-60 days, despite not receiving Gabapentin due

19 to a pharmacy error.  Tr. 31.  The ALJ noted "conservative" hypothyroid treatment

20 and hormone therapy with Dr. Bruce Wilson from May 2021 until November

2023.  Tr 30.  In August 2022, Plaintiff underwent gender-affirming facial feminization surgery and had recovered by November 2022.  Tr. 31.  Plaintiff underwent a consultative exam with Oscar Del Valle, ARNP, who limited her to light work after completing a "normal physical examination."  Tr. 31.  In December 2023, she was examined at Walla Walla Cardiology related to her syncope, collapse, and shortness of breath.  Tr. 31.  The results did not indicate congestive heart failure, and she was rated in class I of the New York Heart Association functional class.  Tr. 31.

The ALJ found the opinion of Dr. Howard Platter, the State Agency medical consultant, somewhat persuasive.  Tr. 36.  Dr. Platter completed a "Physical Residual Functional Capacity Assessment," where he found that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk for about 6 hours in and 8-hour workday, but could never climb ladders, ropes, and scaffolds, and should avoid exposure to workplace hazards.  Tr. 36.  The ALJ credited Dr. Platter's assessment as taking into account Plaintiff's Reynaud's syndrome and fatigue.  Tr. 36.

In May 2023, State Agency consultant Dr. Lewis W. completed a "Physical Residual Functional Capacity Assessment," in which he found no severe physical impairments.  Tr. 36.  The ALJ did not assign this opinion any weight.

The ALJ found ARNP Del Valle's consultive opinions to be unpersuasive

because it is internally inconsistent. Tr. 36. Specifically, the ALJ found that, despite a normal physical examination excluding some spine deviation, ARNP restricted Plaintiff's lifting and carrying to 20-25 pounds occasionally, walking to three hours per day, and standing to three hours per day. Tr. 36. The ALJ found that while Plaintiff's Reynaud's syndrome and Marfan syndrome restrict Plaintiff to medium work, the record does not support the level of extreme restriction found by ARNP Del Valle. Tr. 36. Moreover, the ALJ found inconsistencies with Plaintiff's ability to drive and shop, and found that ARNP Del Valle made psychological findings during a physical consultative examination. Tr. 36

As to her mental health impairments, the ALJ noted Plaintiff's long history with gender dysphoria and social anxiety disorder. Tr. 31. After attempting to overdose in September 2019, Plaintiff was assessed for suicide risk relating to her gender transition surgeries. Tr. 31. She declined inpatient hospitalization related to her mental health. Tr. 32. In November 2021 and February 2022, Plaintiff requested Spravato treatment for severe anxiety and depression. Tr. 32. In April 2022, she presented with a very high score for suicide risk, but refused to speak to a counselor or try a new antidepressant. Tr. 32. In June 2022, her counselor had recently retired, and she was concerned about finding a new psychiatrist competent in transitioning and transitioned patients. Tr. 32.

In September 2022, Plaintiff underwent a consultive physiological

examination with Dr. Jeanette Higgins, where she reported ongoing severe anxiety and depression and detailed her learning disability, discussing how she had utilized special education and ultimately never received a GED.  Tr. 32.  Dr. Higgins categorized Plaintiff's depression and anxiety as severe, but treatable within 12 months, making such findings as: Plaintiff is able to manage funds in her own best interest, she would not have difficulty performing simple and repetitive tasks, she would have difficulty performing detailed and complex tasks on a consistent basis due to her learning difficulties and anxiety, she would not have difficulty accepting instructions from supervisors, she would have difficulty interacting with coworkers and the public due to her anxiety and avoidance, she would not have difficulty performing work activities on a consistent basis, she would have difficulty maintaining regular attendance, and she would have difficulty dealing with workplace stress.  Tr. 32–33.

The ALJ found Dr. Higgin's opinion unpersuasive.  Tr. 35.  While Dr. Higgins found that Plaintiff would have a marked limitation in maintaining regular attendance and dealing with stress in the workplace, the ALJ did not find this consistent with the rest of the medical record, and determined that the opinion relied on subjective allegations based on evidence that Plaintiff was taking her mental health medication, was at a baseline, and refused to see a psychiatrist or try other medications.  Tr. 35

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 12

In June 2023, Plaintiff underwent a consultative psychological examination with Angela Cowell, PMHNP, presenting with anxiety, depression, chronic fatigue, and suicidal thoughts.  Tr. 33.  Among her symptoms of anxiety and depression included a report that she had not been to a store in two years.  Tr. 33. After the exam, ARNP Cowell diagnosed Plaintiff with PTSD, social anxiety disorder, and major depressive disorder, and made the following findings: Plaintiff was not able to manage funds, Plaintiff is able to understand, remember, and carry out simple instructions but not complex instructions, she is not able to sustain concentration and persist in work-related activity at a reasonable pace, and she is neither able to interact with coworkers and supervisors, nor with the general public.  Tr. 34.

The ALJ found ARNP Cowell's opinion unpersuasive, as the finding of marked or severe mental functioning do not appear in the treatment records.  Tr. 35.

State Agency psychologist Dr. Kristine Harrison completed a "Psychiatric Review Technique Form," and found that Plaintiff had a moderate limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in maintaining concentration, persistence, or pace; and a mild limitation in adapting or managing oneself.  Tr. 34. Dr. Harrison also completed a "Mental Residual Functional Capacity Assessment,"

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 13

where she found that Plaintiff had a moderate limitation in understanding and remembering information, carrying out detailed instructions, maintaining attention and concentration for an extended period, completing a normal workday and workweek without interruption, interacting with others, and accepting instruction and responding appropriately to criticism.  Tr. 35.

In June 2023, State Agency psychologist Dr. Michael B. completed a "Psychiatric Review Technique Form," where he found that Plaintiff had a moderate limitation in understanding, remembering, or applying information, interacting with others, maintaining concentration, and adapting or managing oneself. Tr. 35.  Dr. B also completed a "Mental Residual Functional Capacity Assessment," where he found Plaintiff had a moderate limitation in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday without interruptions, interact appropriately with the general public, accept instructions and criticisms from supervisors, get along with coworkers or peers, respond appropriately to the changes in a work setting, and set realistic goals or make plans independently of others.  Tr. 35.

The ALJ found Dr. Harrison's opinion somewhat persuasive and Dr. B's opinion more persuasive as more consistent with the record.  Tr. 35.

The ALJ reviewed the "Mental Medical Source Statements," of Oliver

1    Lawler, LMSW, and found that he is not an appropriate medical source per

2    404.1502(a), as an individual licensed master social worker.  Tr. 36.  The ALJ

3    concluded that his findings of extreme limitations are unsupported in the medical

4    record.  Tr. 36.

5         Likewise, the ALJ found that the letter submitted by Oliver Birchwood-

6    Glover, LICSW as unpersuasive both because he is not an acceptable medical

7    source pursuant to 404.1502(a), an individual who is a licensed independent

8    clinical social worker and the statements contained therein are unsupported by the

9    medical record.  Tr. 36.

10        In taking into account the objective medical evidence, Plaintiff's subjective

11   complaints, and the treatment required, the ALJ determined that the medical

12   evidence was inconsistent with the subjective allegations. Tr. 36–37.  Plaintiff has

13   been taking medication for anxiety, was trying to find a new mental health

14   counselor, believed her impairments related to her environment, and that her

15   mental health improved with gender affirming surgery.  Tr. 37.  She also testified

16   that her seizure disorder does not impair her ability to drive.  Tr. 37.

17        At step four, the ALJ determined that Plaintiff has no past relevant work

18   history.  Tr. 37.

19        At step five, the ALJ determined that Plaintiff is able to perform work in the

20   national economy based on her age, work experience, and residual functional

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLE XVI OF THE SOCIAL SECURITY ACT ~ 15

capacity. Tr. 37–38. At the hearing, the vocational expert assessed opportunities for an unskilled, medium work occupational base and determined that jobs such as cleaner custodian, kitchen helper, and linen room attendant would be available nationally. Tr. 38.

Given the above steps, the ALJ determined that Plaintiff was not disabled.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for Title XVI supplemental security income. Plaintiff raises the following issues on review:

I.    Whether the ALJ erred in rejecting certain medical opinions.

II.    Whether the ALJ erred in rejecting her subjective symptom testimony. ECF No. 13 at 7, 12.

### DISCUSSION

**I.    The ALJ did not err in rejecting certain medical opinions.**

Plaintiff argues that the ALJ erred by rejecting medical opinions from multiple sources that disagreed with her findings. ECF No. 13 at 7. An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)-(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship

with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)-(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 416.920c(b)(2). These factors are explained as follows:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(c)(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same," the ALJ is required

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 17

1    to explain how "the most persuasive factors" were considered.  20 C.F.R.

2    § 416.920c(c)(b)(2).

3         The ALJ determined that ARNP Del Valle placed restrictions on Plaintiff

4    not observed by other medical sources, including lifting 20-25 pounds occasionally

5    and walking or standing for three hours a day, but that there is no support in the

6    record for that level of limitation.  Tr. 36.  Additionally, the opinion stated that

7    Plaintiff does not drive but is able to shop for groceries.  Yet at the hearing,

8    Plaintiff testified that she does drive, but that she had not been to a store in 15

9    years. Tr. 36.  The ALJ discredited Dr. Higgins' opinion as unsupported by the

10   record, and because it relied on Plaintiff's own testimony that she was taking

11   mental health medications and was at "baseline." Tr. 35.  The ALJ rejected the

12   opinion of Angela Cowell, ARNP, because objective medical evidence reviewed

13   by the ALJ contradicted her finding that Plaintiff had a marked limitation in

14   concentration, persistence, and pace.  Tr. 35.  In discounting ARNP Cowell's

15   opinion, the ALJ points to Plaintiff's treatment notes from doctors surrounding her

16   transition that discuss the trajectory of her depression and suicidal ideation.  ECF

17   No. 6 at 666–71 and 716–17.  Plaintiff argues that the ALJ erred by not

18   considering whether these opinions were consistent with each other.  ECF No. 13

19   at 8–12.  And further alleges that the ALJ took into account the non-examining

20   non-treating agency sources of Dr. Kristine Harrison and Dr. Micheal B. because

1    their opinions supported her ultimate finding.  *Id.* at 12.

2        The Court finds that the ALJ has provided reasons grounded in consistency

3    and supportability for adopting the opinions of Dr. Harrison and Dr. B and

4    discounting those of Dr. Higgins, ARNP Cowell and ARNP Del Valle.  The ALJ

5    explained that a holistic review of the medical records provided more support for

6    the findings of Dr. B and Dr. Harrison, and less support for the findings of Dr.

7    Higgins, ARNP Cowell and ARNP Del Valle.  This reasoning is supported, as Drs.

8    B and Harrison reviewed the Plaintiff's medical records in rendering their

9    decisions.  *Zuniga v. Saul*, 801 Fed. Appx. 465, 467 (9th Cir. 2019) (citing

10   *Tonapetyan v. Halter*, 242 F.3d 1144, 1148–49 (9th Cir. 2001)).  Moreover, the

11   ALJ provided specific reasons for rejecting each of the opinions separate from

12   their individual inconsistency with the record as a whole.  Dr. Higgins relied on

13   Plaintiff's subjective reports and refusal to see a psychiatrist or behavioral health

14   specialist as the basis for her findings.  Tr. 35.  This is confirmed in Dr. Higgin's

15   report, which also stated that Plaintiff's mental health conditions are treatable and

16   could be expected to improve within 12 months with psychotherapy and/or

17   medication management.  ECF No. 6 at 705–10.  As stated above, the ALJ pointed

18   to specific records she found to be inconsistent with ARNP Cowell's

19   determination.  Tr. 35.  Notably, ARNP Cowell also found that Plaintiff could

20   improve with optimal treatment over a 12-month period.  ECF No. 6 at 807.  And

Plaintiff's testimony contradicts ARNP Del Valle's findings, and the record contradicts the physical limitations imposed.  ECF No. 6 at 54–55 and 782–87.

Plaintiff has not met her burden to show that the ALJ's interpretation of the challenged opinions was unsupported by substantial evidence.  As aforementioned, "[s]ubstantial evidence is more than a mere scintilla but less than a preponderance."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).  The ALJ's decision should be upheld where the "evidence is susceptible to more than one rational interpretation."  *Id.* (citation omitted).  The court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina*, 674 F.3d at 1111.  Here, the Court finds adequate findings that articulate specific consistency and supportability factors used to discount certain medical opinions.  As such, the ALJ is affirmed.

## II.    The ALJ did not err in consideration of Plaintiff's subjective complaints.

Next, Plaintiff argues that the ALJ improperly discounted her subjective symptom testimony by not offering specific evidence that was deemed inconsistent with her testimony.  ECF No. 13 at 15–16.

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. § 404.1508.  A claimant's

statements about his or her symptoms alone will not suffice.  20 C.F.R.

§§ 404.1508; 404.1527.  Once an impairment has been proven to exist, the

claimant need not offer further medical evidence to substantiate the alleged

severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.

1991).  As long as the impairment "could reasonably be expected to produce [the]

symptoms," 20 C.F.R. § 404.1529(b), the claimant may offer a subjective

evaluation as to the severity of the impairment. *Id.*  This rule recognizes that the

severity of a claimant's symptoms "cannot be objectively verified or measured."

*Id.* at 347 (quotation and citation omitted).

However, in the event an ALJ finds the claimant's subjective assessment

unreliable, "the ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

2002).  In making such determination, the ALJ may consider, *inter alia*: (1) the

claimant's reputation for truthfulness; (2) inconsistencies in the claimant's

testimony or between his testimony and his conduct; (3) the claimant's daily living

activities; (4) the claimant's work record; and (5) testimony from physicians or

third parties concerning the nature, severity, and effect of the claimant's condition.

*See id.*  If there is no evidence of malingering, the ALJ's reasons for discrediting

the claimant's testimony must be "specific, clear and convincing." *Chaudhry v.*

1    *Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The

2    ALJ "must specifically identify the testimony she or he finds not to be credible and

3    must explain what evidence undermines the testimony."  *Holohan v. Massanari*,

4    246 F.3d 1195, 1208 (9th Cir. 2001).

5        At step one, the ALJ found that Plaintiff's medically determinable

6    impairments could reasonably be expected to cause the alleged symptoms.  Tr. 29–

7    30.  But at step two, the ALJ determined that the intensity, persistence, and

8    limiting effect of the symptoms were not entirely consistent with the record.  An

9    ALJ may not discredit a claimant's symptom testimony and deny benefits solely

10   because the degree of the symptoms alleged is unsupported by objective medical

11   evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v.*

12   *Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601

13   (9th Cir. 1989).  However, the objective medical evidence is a relevant factor,

14   along with the medical source's information about the claimant's pain or other

15   symptoms, in determining the severity of a claimant's symptoms and their

16   disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  Here, the

17   ALJ found that Plaintiff's medication has managed her seizures, and she is able to

18   drive, despite conflicting opinion reports stating otherwise.  Tr. 29.  She can

19   complete chores and hygiene tasks.  Tr. 29.  And the ALJ determined that the

20   objective medical records do not support the level of physical debilitation Plaintiff

described.  *See* ECF No. 6 at 77, 787 ("As expected, pts PE was completely normal, with exception to spine deviation which would most likely be related to her [M]arfan syndrome.").  Her mental health records do not support any marked or extreme limitations.  Tr. 37.  Moreover, her testimony at the hearing was inconsistent with reports contained in the medical records with respect to driving and daily activities.  *See* ECF No. 6 at 54–55.  Therefore, the Court does not find that the ALJ erred in her findings of Plaintiff's subjective complaints.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 13) is **DENIED**.

2. Defendant's Response Brief (ECF No. 14) is GRANTED.  The decision of the Commissioner is **AFFIRMED.**

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED July 14, 2025.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT ~ 23